**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Daniel Thomas KERRIGAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 18, 2006.
Filed March 8, 2007.

Norris E. Gelman, Philadelphia, for appellant.

James B. Martin, Asst. Dist. Atty., Allentown, for the Com., appellee.

BEFORE: STEVENS, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this case, we consider, *inter alia*, whether the transmission of Human Papillomavirus (HPV) and genital warts to a child satisfies the serious bodily injury requirement set forth in 18 Pa.C.S. section 3121(d), Rape of Child (Serious Bodily Injury) and 18 Pa.C.S. section 3123(c), Involuntary Deviate Sexual Intercourse with a Child (Serious Bodily injury). The Appellant, Daniel Kerrigan, seeks an arrest of judgment and argues, among a host of other errors, that the Commonwealth failed to establish the serious bodily injury requirement as required by statute in as much as the transmission of HPV and genital warts does not constitute serious bodily injury. After review and study, we conclude that the transmission of HPV and genital warts does satisfy the serious bodily injury requirement because of the permanent nature of the disease, the fact that the victim risks passing the virus to any future sexual partners or children she may choose to have through the birth canal, and because there is a strong link between HPV and cervical and other genital cancers. Consequently, we hold that Kerrigan's argument on that issue does not require reversal of the trial court's Judgment of Sentence.

¶ 2 In addition to appealing the conviction Rape of a Child (Serious Bodily Injury) and Involuntary Deviate Sexual Intercourse with a Child (Serious Bodily injury), Kerrigan also appeals his convictions for Rape of a Child, Involuntary Deviate Sexual Intercourse, two counts of Aggravated Indecent Assault, Indecent Assault, and Corruption of Minors. *See* 18 Pa.C.S. §§ 3121(c), 3123(b), 3125(a)(1)(b), 3126(a)(7), 6301(a)(1). In support of his appeal, Kerrigan sets

forth a number of arguments, including, *inter alia*, that the evidence was insufficient to support certain convictions, that the trial court lacked jurisdiction, that the trial court erred in unconstitutionally shifting the burden of "being believed" onto Kerrigan, that the trial court erred in failing to grant a mistrial after a witness revealed Kerrigan had previously been incarcerated and that his trial counsel was ineffective. After review and study, we find that none of Kerrigan's alleged errors requires reversal. Consequently, we affirm the trial court's judgment of sentence.

¶ 3 This case involves the sexual abuse of a child, A.R., by Kerrigan. A.R.'s mother met Kerrigan in 1994 and the two began dating in 1996. They began living together in 1999 and A.R. was also a member of the household. Kerrigan began sexually abusing A.R., when she was 7 years old and the abuse continued until she was 10 years old, when it was discovered that A.R. had genital warts. The abuse began while the parties were living in New Jersey and got worse after the parties moved to Pennsylvania.

¶ 4 The trial court set forth the following facts:

During their residence at the Whittier Apartments, A.R. made her first accusations of sexual abuse against [Kerrigan]. Following a discussion between [Kerrigan, A.R., and her mother], in which [Kerrigan] denied the accusation, [mother] chose not to believe her daughter. A.R. made additional accusations of sexual abuse against [Kerrigan], and each time [Kerrigan] denied it, and no further action was taken. Finally, following a physical inspection of her daughter's genital area, [mother] made an appointment with a physician, and genital warts were discovered.

Doctor John Van Brakle, Chairman of Pediatrics at Lehigh Valley Hospital, was qualified as an expert in pediatric medicine and examination and treatment of child sexual assault injuries. Doctor Van Brakle examined A.R. and discovered "a series of dark lesions, spots, that were in the area around her anus, and then more anteriorally to the area surrounding her vaginal area." The genital warts had previously been removed by Dr. John Scaffidi, whose testimony was presented by stipulation. Doctor Scaffidi saw A.R., who was ten (10) at the time, and discovered that she had HPV (Human Papillomavirus) "or genital warts around her vagina and anus. On that date he used a laser to vaporize all of her external genital warts around her vagina and anus."

It was explained by Doctor Van Brakle that genital warts are transmitted primarily, although not exclusively, by "genital to genital contact." HPV is the most common sexually transmitted disease amongst adolescents in the United States. This virus is associated with a variety of genital cancers, including cervical cancer. In fact, A.R. is at a higher risk of developing cervical cancer or cancer of the rectum because she is HPV positive. "It's thought that, at least eighty percent ... perhaps ninety percent of cervical cancer is a result of a previous HPV infection." Finally, Doctor Van Brakle rendered the opinion that evidence of sexual abuse was present.

A.R. disclosed that [Kerrigan] began touching her when she lived in New Jersey. Following their arrival at the Whittier Apartments, the abuse continued and escalated to vaginal and anal intercourse. The repeated incidents of sexual abuse took place in various rooms within the home while her mother was either not home or sleeping. They also

increased as she got older with the most frequency at their last residence in Catasauqua [Pennsylvania].

Trial Court Opinion ("T.C.O."), 11/07/05, at 3–4 (footnotes omitted).

¶ 5 Following his trial, a jury found Kerrigan guilty on all counts and the trial court sentenced him to twenty-five to fifty years' imprisonment. Kerrigan filed post-sentence motions, which the trial court denied. Kerrigan then filed this appeal with our Court, and presents the following list of questions for our review:

I. Was the evidence insufficient to support the conviction which required penile penetration as an element because there was insufficient evidence to establish that any crime involving penile penetration as an element thereof occurred in Pennsylvania?

II. Did the court lack subject matter jurisdiction over the crimes involving penile penetration?

III. Should this Court find that there was sufficient evidence to confer jurisdiction on the penile penetration crimes, trial was counsel [sic] ineffective for failing to request jury instructions delineating the need to find—beyond a reasonable doubt—that such conduct occurred in Pennsylvania?

IV. Was trial counsel ineffective for failing to raise an objection to the court's jury instructions that positioned the case so that the jury would have to determine who to believe—thereby placing a burden of being believed on the defendant's testimony and his defense—and also depriving him of reasonable doubts to which he was entitled under the federal constitution?

V. Did the trial court's general instructions that the defendant had no burden to prove that he was not guilty and that the Commonwealth had the burden of proving each and every element of the offense cure or overcome the conflicting and unconstitutional instructions it gave as to the jury's obligation to determine which conflicting testimony to believe?

VI. Should the court have granted the defense motion for a mistrial when a Commonwealth witness revealed that the appellant had been imprisoned in New Jersey?

VII. Was trial counsel ineffective for failing to request a cautionary instruction as to the alleged prior criminal activity to which AR testified in New Jersey?

VIII. Must an arrest of judgment be granted on Appellant's conviction for rape of a child with serious bodily injury and involuntary deviate sexual intercourse with serious bodily injury because serious bodily injury was not proven?

Brief for Appellant at 6 (capitalization removed to improve readability).

¶ 6 In support of his first question, Kerrigan argues that the evidence was insufficient to support his convictions "which required penile penetration" because the evidence was insufficient to establish that any penetration occurred in Pennsylvania. Brief for Appellant at 23. Pursuant to statute, the convictions that require penile penetration are Rape of a Child, Rape of a Child (Serious Bodily Injury), Involuntary Deviate Sexual Intercourse, and Involuntary Deviate Sexual Intercourse (Serious Bodily Injury).

¶ 7 In reviewing a sufficiency claim, we must view all the evidence in the light most favorable to the Commonwealth as the verdict winner to determine if the factfinder could have found each element of the crime proven beyond a reasonable doubt. See Commonwealth v. Hughes, 521

Pa. 423, 555 A.2d 1264, 1267 (1989). We may not weigh the evidence, nor "substitute our judgment for that of the fact-finder." *Commonwealth v. Zingarelli*, 839 A.2d 1064, 1069 (Pa.Super.2003) (citation omitted).

> In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super.2003) (citation omitted).

¶ 8 In support of this question, Kerrigan argues that A.R.'s testimony on whether the abuse occurred in Pennsylvania or New Jersey is contradictory and that the jury could do more than guess as to whether the abuse occurred in Pennsylvania. Brief for Appellant at 23. Specifically, he argues that initially A.R. denied penile contact in Pennsylvania when she spoke with Detective Rentko, a detective that spoke with her following the allegations of abuse, but that in a second interview, she stated that Kerrigan penetrated her. Brief for Appellant at 25. Kerrigan argues that "A.R.'s severely contradicted hearsay statements" are insufficient evidence that any penile penetration occurred in Pennsylvania. Brief for Appellant at 25. Kerrigan also claims that A.R.'s trial testimony only discussed events which occurred in New Jersey. Brief for Appellant at 25.

¶ 9 Kerrigan misstates the record and the testimony of Detective Rentko. A.R. testified, on cross-examination, that Kerrigan abused her in Pennsylvania as well as in New Jersey. During cross-examination, the following exchange took place between A.R. and Kerrigan's counsel:

Q: Okay. Where all have you lived that there was some form of abuse?

A: Well, we started in New Jersey, and then Pennsylvania ...

\* \* \* \*

Q: Okay. Did anything take place in Pennsylvania?

A: Yes, sir.

Notes of Testimony ("N.T.") (Trial), 12/08/04, at 85. Detective Rentko testified that A.R. told her that the abuse gradually got worse beginning from the time she lived in New Jersey and increased when they moved to Pennsylvania. N.T. (Trial), 12/08/04, at 264. A.R. also told Detective Rentko that Kerrigan had "put his private inside where she pees and poops." N.T. (Trial), 12/08/04, at 261. A.R. further told Detective Rentko that Kerrigan "mov[ed] up and down" when he was inside of her. N.T. (Trial), 12/08/04, at 262.

¶ 10 We are unwilling to find that the above testimony and evidence is so weak and inconclusive that as a matter of law the jury was unable to find that Kerrigan penetrated A.R. with his penis in Pennsylvania as prohibited by statute. Thus, the evidence is sufficient to support Kerrigan's convictions for the crimes involving penile penetration.

¶ 11 In support of his second question, Kerrigan argues that the trial court lacked

subject matter jurisdiction because there was insufficient evidence to support the commission of the crimes involving penile penetration in Pennsylvania. Brief for Appellant at 41. Essentially, Kerrigan argues that because the evidence was insufficient to establish that penile penetration occurred in Pennsylvania, the trial court lacked subject matter jurisdiction over those crimes. Brief for Appellant at 41. This argument is without merit. The court of common pleas has subject matter jurisdiction to hear cases arising out of the Crimes Code. *See Commonwealth v. Bethea,* 574 Pa. 100, 828 A.2d 1066, 1074 (2003) (finding that charges arising out of the Crimes Code are entrusted to the courts of common pleas for proper resolution). In this case, we found that sufficient evidence existed for the finding that the crimes involving penile penetration occurred in Pennsylvania, thus it is clear that conduct related to the charges occurred in Pennsylvania and jurisdiction is proper there. Consequently, Kerrigan's second question is of no merit.

¶ 12 In support of his third question, Kerrigan argues that his counsel was ineffective for failing to request a specific instruction that the Commonwealth must prove the element of jurisdiction beyond a reasonable doubt. Brief for Appellant at 43. Preliminarily, we note that although pursuant to *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 737–38 (2002), an appellant should generally wait until collateral review to raise claims of ineffective assistance of counsel, this case falls within the exception to that rule. Pursuant to *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 853–55 (2003), *Grant* does not apply where the trial court held a hearing and addressed the ineffectiveness claim in its Opinion, which occurred in this case.

¶ 13 "An ineffective assistance of counsel claim has three elements." *Common-*

*wealth v. Battle,* 883 A.2d 641, 645 (Pa.Super.2005).

> Specifically, appellant must show the following: (1) that the [underlying] claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Id* (citation omitted).

¶ 14 Preliminarily, we note that the trial court gave the following instructions to the jury:

> Remember, in this case, as in all cases, one of the very important functions of the jury is to determine the facts. **What did actually happen in Catasauqua, Lehigh County, between [A.R.] and Daniel Kerrigan, if anything.**

N.T. (Trial), 12/09/04, at 86 (emphasis added). Kerrigan argues that this instruction was not adequate and that his counsel was ineffective for failing to request an instruction that the jury must find beyond a reasonable doubt that the alleged conduct occurred in Pennsylvania. Brief for Appellant at 45–46. The trial court noted that Kerrigan conceded that A.R. was sexually abused, but that he was not the abuser. T.C.O., 11/17/05, at 6. It further noted that Kerrigan, "in his own testimony, agreed that A.R. was sexually abused but testified that he did not do so. Therefore, jurisdiction would only have been of concern if the defense had made the questionable strategic decision to allege that the defendant abused A.R. in New Jersey, but not Pennsylvania." *Id.* Finally, the trial court noted that, "[t]here was no real issue as to jurisdiction until this retrospective analysis attempted to reframe the defense." *Id* at 7. Kerrigan's trial counsel's failure to require such an instruction did not prejudice Kerrigan, as he argued that

Kerrigan did not abuse A.R. in Pennsylvania or New Jersey, and the jury would have convicted Kerrigan even if the instruction were given. *See Commonwealth v. Potts*, 388 Pa.Super. 593, 566 A.2d 287, 295–96 (1989). We also note that there is doubt as to whether an objection as to jurisdiction was of any merit, as required by the first prong of the ineffectiveness test because there is sufficient evidence to establish that the abuse involving penile penetration occurred in Pennsylvania. Kerrigan's third question does not require reversal of his judgment of sentence.

■ ¶ 15 In support of his fourth question, Kerrigan argues that his trial counsel was ineffective for failing to object to the trial court's instructions to the jury, claiming that the instructions shifted a burden of proof from the Commonwealth to Kerrigan. Brief for Appellant at 46. Kerrigan argues that the trial court's instructions relating to believability of witnesses placed a burden of being believed on Kerrigan and deprived him of his right to reasonable doubt. Brief for Appellant at 46. As discussed above, in order to succeed on a claim for ineffective assistance of counsel, the appellant must prove: the merits of the underlying claim, that counsel had no strategic reason for taking the actions he took, and that but for the errors of counsel, the outcome of the trial would have been different. *See Battle*, 883 A.2d at 645. Under the first prong, we will not find that a defendant's counsel was ineffective for failing to raise a meritless claim. *See Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 203 (1997).

¶ 16 Accordingly, we will first determine whether there is any merit to Kerrigan's underlying claim, which would require finding that the trial court erred when it instructed the jury regarding believability of the witnesses. In this case, the trial court gave the following allegedly objectionable instructions:

[H]ow do you determine the believability of witnesses?

Well, every day [*sic*] of your lives you decide for yourself whether somebody who is speaking to you is telling you a truthful and straightforward story, one which you can rely upon in your own affairs. Because you've done this over and over again, you've acquired a certain amount of experience and a certain amount of good common sense. You don't leave your common sense in the Courtroom, you take your common sense with you into the jury deliberation room when you decide upon this case.

N.T. (Trial), 12/09/04, at 89.

If, however, you decide that there is a genuine and irreconcilable conflict of the testimony, it's your duty to determine which, if any, of the contradictory testimony you will believe.

N.T. (Trial), 12/09/04 at 91.

After you've elected a foreperson, then review the testimony which has been presented. Review the evidence of each witness who has testified and determine the extent to which you are accepting that testimony. Having done that, then apply the law that I've given you, which will bring you to the critical question which you're going to have to decide. Which is the guilt or innocence of the Defendant on each of these crimes.

N.T. (Trial), 12/09/04, at 111.

¶ 17 Kerrigan argues that the above instructions are objectionable and that his trial counsel was ineffective for failing to object to them on the grounds that they shifted the burden of believability to Kerrigan and deprived him of the reasonable doubt standard to which he is entitled under the federal constitution. Brief for Appellant at 48. He further extrapolates

from the above snippets of jury instruction that the jury was instructed that unless they believed Kerrigan's testimony and that of his witnesses, he must be found guilty. Brief for Appellant at 48–49. Kerrigan's argument is without merit, as discussed below, and thus his ineffective assistance of counsel argument does not offer grounds for relief.

¶ 18 First and foremost, when evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. See Commonwealth v. Spotz, 587 Pa. 1, 896 A.2d 1191, 1247 (2006). We further note that, "[i]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." Id (citation omitted). "Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." Hall, 701 A.2d at 207.

¶ 19 After reviewing the above instructions, even out of context, we are unable to find error on the part of the trial court. Indeed, the trial court never instructed the jury that unless they believed Kerrigan was telling the truth, he should be found guilty. Rather, the trial court provided the jury with general hornbook law regarding how to determine the weight and credibility it should give the testimony of the witnesses that testified before it. It is a basic tenant of our judicial system that issues of credibility are left solely to the jury for resolution, and the jury is free to believe all, part, or none of the testimony presented. See Commonwealth v. Arms, 489 Pa. 35, 413 A.2d 684, 686 (1980). When the instruction is properly viewed in its context, it is clear that the trial court

was instructing the jury on how to determine the credibility of the witnesses and how to resolve conflicts in testimony. N.T. (Trial), 12/09/04, at 90–93. The trial court also clearly instructed the jury that the burden of proof is on the Commonwealth, that Kerrigan was to be presumed innocent, that the Commonwealth must prove Kerrigan guilty beyond a reasonable doubt and that Kerrigan does not have the duty to prove that he is not guilty. N.T. (Trial), 12/09/04, at 108–09. Finally, we note that the language used by the trial court closely tracked the language in the Pennsylvania Standard Criminal Jury Instructions, and it presumed that such instructions are an accurate statement of the law. See Commonwealth v. Prosdocimo, 525 Pa. 147, 578 A.2d 1273, 1276–77 (1990).

¶ 20 Kerrigan relies on Commonwealth v. Pounds, 490 Pa. 621, 417 A.2d 597 (1980) in support of his argument. Brief for Appellant at 50–52. Pounds is not analogous. The Appellant in Pounds sought a jury instruction that Pounds' alibi evidence, even if not believed, could raise a reasonable doubt. See id. at 601–02. Our Supreme Court found that this instruction was necessary in a case regarding an alibi defense, because there is a danger that a failure to prove an alibi defense will be taken by the jury as a sign of guilt. See id. at 603. There is no similar concern in this case because this case does not involve an affirmative defense. We also note that the trial court in this case specifically instructed the jury that "[i]t's entirely possible that a witness testified falsely and intentionally in one respect, but truthfully about everything else. If that's the situation, then you may accept the part of the testimony which is truthful and reject that part which is not." N.T. (Trial), 12/09/04, at 92. The trial court accurately and properly set forth the law in its jury instruction, and this Court will not find Kerri-

gan's trial counsel ineffective for failing to raise a meritless objection. Kerrigan's ineffectiveness claim fails.

¶ 21 In support of his fifth question, Kerrigan argues that the trial court erred because the general instructions it gave regarding the Commonwealth's burden of proof did not cure the allegedly unconstitutional instructions regarding credibility. Brief for Appellant at 55. This argument is without merit. First and foremost, we note that Kerrigan failed to object to the instructions-thus this argument is waived. *See, e.g., Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750, 758 (2005). Further, as discussed in response to his argument regarding his fourth question, the trial court's instructions in this case did not constitute error or an abuse of discretion. Thus, Kerrigan's fifth question is without merit and does not warrant reversal of his convictions.

¶ 22 In support of his sixth question, Kerrigan argues that the trial court erred when it refused to grant a mistrial after the Commonwealth elicited that Kerrigan had been in prison in New Jersey. Brief for Appellant at 57. In this case, Marlene Dal Maso, a child protective service worker, testified that Kerrigan had been incarcerated in New Jersey. N.T. (Trial). 12/08/04, at 208. The following is an excerpt of the exchange between Dal Maso and the Commonwealth on direct examination:

Q: The Defendant ever indicate to you whether or not he ever had genital warts?

A: He said that he had genital warts about—he had a genital wart outbreak about twenty years earlier.

Q: Okay. After he said that, what else did he tell you?

A: I—he indicated that he tested— tested negative for genital warts, that he had an outbreak about twenty years earlier. That during a stay in prison in New Jersey he had test—

N.T. (Trial), 12/08/04, at 208. At this point, Kerrigan's counsel objected to Dal Maso's testimony and asked for a mistrial. N.T. (Trial), 12/08/04, at 208–209. The trial court denied the request. Our standard of review for the denial of a motion for mistrial is as follows:

> The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard. The central tasks confronting the trial court upon the making of the motion were to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice.

*Commonwealth v. Sanchez*, 589 Pa. 43, 907 A.2d 477, 491 (2006) (internal citation omitted). Additionally, when dealing with a motion for mistrial due to a reference to past criminal behavior, "[t]he nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Guilford*, 861 A.2d 365, 370 (Pa.Super.2004).

¶ 23 In this case, it is clear that the Commonwealth did not intentionally elicit the information from the witness in this case. Indeed, as counsel for the Commonwealth stated at side bar, he specifically did not ask where the interview between Dal Maso and Kerrigan occurred, presumably because it occurred in the New Jersey prison. N.T. (Trial), 12/08/04, at 210. Kerrigan argues that the above testimony "could only mean to the jury that New Jersey had arrested and/or convicted Appellant on the crimes witnesses (AR and Detective Rentko) had attributed to his having committed in New Jersey, giving

great credence to the fact that he molested AR, in New Jersey and then again in Pennsylvania." Brief for Appellant at 58. This contention is not supported by the record. Dal Maso made a single reference to the fact that Kerrigan was incarcerated in New Jersey. She did not state when he was incarcerated, the nature of his stay in prison, or the charges for which he was convicted. At most, the jury in this case could have inferred that Kerrigan was incarcerated at some point in his past for an unknown crime. This singular, passing reference to a prior conviction is simply not sufficient to show that the trial court abused its discretion in denying Kerrigan's motion for a mistrial. *See, e.g., Guilford,* 861 A.2d at 370–71 (finding no trial court error in denying a mistrial where there were two passing references to the defendant's prior convictions).

¶ 24 In support of his seventh question, Kerrigan argues that his counsel's decision not to seek a cautionary instruction as to the alleged prior criminal acts that Kerrigan committed in New Jersey constituted ineffective assistance of counsel. Brief for Appellant at 59. Kerrigan argues that the failure to request an instruction was "outright ineffectiveness" because this issue relates so closely to jurisdiction. Brief for the Appellant at 59. In its Opinion, the trial court found that in this particular circumstance, because Kerrigan denied "that he committed any of the acts in either jurisdiction, the failure to request that type of an instruction did not prejudice the defendant. Appellate counsel's hindsight evaluation would require trial counsel to deny the sexual abuse, but claim if abuse happened, it only occurred in New Jersey." T.C.O., 11/17/05, at 18 n. 48. The trial court further noted that Kerrigan failed to show that but for the failure to give the cautionary instruction regarding jurisdiction, the outcome of the case would be different. *See. id.* (citing *Battle,* 883 A.2d at 649; *Potts,* 566 A.2d at 295).

¶ 25 On appeal, Kerrigan must show that but for the ineffective assistance of counsel, there is a reasonable probability that the outcome would be different. *See Battle,* 883 A.2d at 645. Based upon the testimony set forth at trial, it was established that Kerrigan sexually abused A.R. on a regular basis over a period of three years—from the time that A.R. was seven until she was ten years old. Kerrigan began abusing A.R. while they were living in New Jersey and the abuse continued and escalated after they moved to Pennsylvania. Kerrigan gave A.R. a sexually transmitted disease. Kerrigan stopped abusing A.R. only after A.R.'s mother discovered genital warts on her ten year old daughter's vagina and anus. Considering the overwhelming nature of the evidence in this case, we are unable to discern how Kerrigan's counsel's failure to request a cautionary instruction caused any real prejudice and thus, we find that Kerrigan's seventh question offers no relief. *See Commonwealth v. Sam,* 535 Pa. 350, 635 A.2d 603, 608 (1993) (holding that "in the instant case, on the facts presented here, we are certain that the jury would have returned the same verdict . . . had it been properly instructed. . . . .The failure to request the limiting instruction did not alter the outcome.").

¶ 26 In support of his eighth and final question, Kerrigan seeks an arrest of judgment for the convictions for Rape of Child (Serious Bodily Injury) and Involuntary Deviate Sexual Intercourse with a Child (Serious Bodily Injury) because the Commonwealth failed to establish that A.R. suffered serious bodily injury. Brief for Appellant at 62. Specifically, Kerrigan argues that pursuant to the Criminal Code, serious bodily injury is defined as

"bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ" and that the transmission of genital warts, or HPV, does not satisfy that standard. Brief for Appellant at 62–63 (citing 18 Pa.C.S. § 2301).

¶ 27 Kerrigan argues that the possibility that A.R. may, at some point, develop cervical cancer does not satisfy the requirement of serious bodily injury. The issue of whether genital warts and the transmission of HPV can constitute serious bodily injury presents an issue of first impression for this Court. However, a number of other jurisdictions have looked at various sexually transmitted diseases other than HPV/genital warts, and have found that the transmission of a sexually transmitted disease constitutes serious or grievous bodily harm. Indeed, we are persuaded that, as the California Court of Appeals found, "[p]regnancy, abortion or venereal disease constitute[s] injury significantly and substantially beyond that necessarily present in the commission of an act of unlawful sexual intercourse." *People v. Superior Court(Duval)*, 198 Cal.App.3d 1121, 1131, 244 Cal.Rptr. 522 (1988). Further, a review of case law from other jurisdictions supports our finding that the transmission of HPV/genital warts constitutes serious bodily injury. *See United States v. James*, 957 F.2d 679, 680 (9th Cir.1992) (finding that transmission of herpes to victim of sexual assault constituted a permanent or life threatening injury, which is defined as "injury involving a substantial risk of death; loss or substantial impairment of the function of a body member, organ or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent."); *People v. Shivers*, 2002 WL 1063962, at *6 (Cal.Ct.App.2002) (Not Reported) (finding that infection with gonor-

rhea constitutes great bodily injury); *People v. Johnson*, 181 Cal.App.3d 1137, 1139–1141, 225 Cal.Rptr. 251 (1986) (upholding jury's finding that defendant inflicted great bodily injury upon victim when he infected her with genital herpes). *See also United States v. Reister*, 40 M.J. 666, 669–70 (NMCMR1994) (finding from military tribunal that transmission of herpes was sufficient to satisfy grievous bodily injury requirement).

¶ 28 In its Opinion, the trial court relied on some information that appears to be outside the record in this case—namely, that HPV can lead to cervical cancer and that HPV is present in 90–100% of the cases of cervical cancer. T.C.O., 11/17/05, at 14. The court also noted that HPV is an etiologic agent in other anal and genital tract cancers. T.C.O., 11/17/05, at 13. The trial court further found that the HPV compromised A.R.'s immune system. T.C.O., 11/17/05, at 14. Although it is not clear whether the trial court acted properly in looking outside the record in making its findings regarding the dangers associated with HPV, Kerrigan does not claim that this is error and, thus, we will not address the propriety of the trial court's actions in this matter. We also note that Dr. Van Brakle testified that HPV is a virus that lays dormant in the body for long periods of time and that a mother, through vaginal child birth, may pass HPV and genital warts on to her child. N.T. (Trial), 12/08/04, at 120. He also testified that although A.R. may be asymptomatic, she could pass HPV on to another individual. N.T. (Trial), 12/08/04, at 123. Further, genital warts can be a lifetime affliction; although the warts themselves may be removed, they could recur at any point. N.T. (Trial), 12/08/04, at 120–23. Dr. Van Brakle also testified that 80 to 90 percent of cervical cancer is a result of a previous HPV infection. N.T. (Trial), 12/08/04, at

126. He further testified that A.R. "needs to be followed very closely" because of the strong link between HPV and cervical cancer and other cancers of the genital area. N.T. (Trial), 12/08/04, at 125–26.

¶ 29 In this case, Kerrigan infected A.R. with a virus that may afflict A.R. throughout her life. A.R. will have to live with the genital warts as a constant reminder of the abuse she suffered at the hands of Kerrigan. Further, A.R. could pass the virus onto other individuals and even to her own children, should she choose to have any. Finally, we note that the strong link between cervical and other genital cancers and HPV are sufficient to satisfy the serious bodily injury requirement set forth under the relevant statutory law and an arrest of judgment is not warranted.

¶ 30 For all the foregoing reasons,

¶ 31 Judgment of sentence **AFFIRMED.**