J-S13020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NAQUAN MALCOLM CROSS | : | |
| | : | |
| Appellant | : | No. 1160 MDA 2021 |

Appeal from the Judgment of Sentence Entered April 19, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000986-2019

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                  **FILED JULY 06, 2022**

Appellant, Naquan Malcolm Cross, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his jury trial convictions for persons not to possess a firearm and carrying a firearm without a license.[1]  We affirm in part and vacate the judgment of sentence in part.

The relevant facts and procedural history of this appeal are as follows. On January 2, 2019, York City Police Officer Daniel Kling, along with other officers and U.S. Marshals, congregated in an alley behind the residence at 306 Kurtz Avenue.  The officers and marshals were present to serve an arrest

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.

warrant. At approximately 8:10 a.m., Officer Kling noticed Appellant carrying a backpack and walking towards him. After Appellant saw the officers, he reversed course and began to walk away from the scene. Officer Kling started to follow, and Appellant broke into a run. During his flight, Appellant discarded the backpack. Officer Kling retrieved the backpack, which contained a loaded firearm.

On March 4, 2019, the Commonwealth filed a criminal information charging Appellant with various firearms offenses. Appellant filed a suppression motion on April 16, 2019. Following a hearing, the court denied the suppression motion on June 5, 2019. Appellant subsequently proceeded to a jury trial, where Officer Kling testified about his identification of Appellant:

> I was able to identify this person that came into the alleyway. He saw me, turned around, and came back out to Stone Avenue. This person was identified as [Appellant], and I knew him by name and face upon sight of him.

(N.T. Trial, 3/2/21, at 74). Trial counsel immediately objected to the officer's statement as unfairly prejudicial, but he withdrew the objection following a sidebar. (*Id.* at 74-75).

Later, Deputy Nathan Payne, a York County Sheriff's Deputy who assisted with the service of the warrant, testified about his interaction with Appellant on the day of the incident. Deputy Payne explained that Officer Kling initially alerted him to Appellant's presence: "I was notified by Officer Kling that an individual of which he knows and has had prior dealings with—" (*Id.* at 149). At that point, trial counsel raised another objection, and the

- 2 -

court conducted a discussion with the attorneys in chambers. (*See id.* at 150). During this discussion, trial counsel moved for a mistrial, claiming that it was "unfairly prejudicial" for the law enforcement witnesses to reference prior interactions with Appellant. (*Id.* at 151-52). The court declined to grant a mistrial, but it offered to provide a curative instruction. (*Id.* at 154-55). Trial counsel did not accept the offer for a curative instruction. (*Id.* at 155).

At the conclusion of trial, the jury found Appellant guilty of the above-mentioned crimes. On April 19, 2021, the court sentenced Appellant to an aggregate term of five (5) to ten (10) years' imprisonment, followed by one (1) year of reentry supervision, pursuant to 61 Pa.C.S.A. § 6137.2. On April 28, 2021, Appellant timely filed a post-sentence motion. The court denied Appellant's post-sentence motion on July 30, 2021.

Appellant timely filed a notice of appeal on August 27, 2021. On September 7, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 28, 2021, Appellant timely filed his Rule 1925(b) statement.

Appellant now raises two issues for our review:

> Did the trial court abuse its discretion in denying a mistrial after two police officers testified that [Appellant] was known to one of them, thus signaling to the jury that [Appellant] had committed other crimes?
>
> Did the court impose an illegal sentence where, pursuant to a statute enacted after the conduct at issue in this case, it ordered [Appellant] to undergo one year of reentry supervision following his release from incarceration in violation of the *ex post facto* clauses of the United States

and Pennsylvania Constitutions?

(Appellant's Brief at 4).

In his first issue, Appellant argues that Officer Kling's testimony that he "knew [Appellant] by name and face upon sight of him," was unfairly prejudicial because it strongly indicated prior criminal conduct. (*Id.* at 15). Appellant acknowledges that a single remark without specific reference to criminal activity will not automatically warrant a mistrial. Nevertheless, Appellant insists that Officer Kling's statement, in conjunction with Deputy Payne's testimony, "made it a more than reasonable inference [to the jury] that [Appellant] was familiar to the police because he had committed prior crimes." (*Id*. at 17). Appellant claims the prejudicial impact of the testimony from the two witnesses was not harmless in light of the other facts of the case. Appellant concludes that the court abused its discretion by denying his motion for mistrial, and this Court must grant relief. We disagree.

Our standard of review of a court's denial of a motion for mistrial is as follows:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct

- 4 -

or prejudicial error actually occurred, and if so, … assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with the law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Tucker*, 143 A.3d 955, 961 (Pa.Super. 2016), *appeal denied*, 641 Pa. 63, 165 A.3d 895 (2017) (quoting *Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa.Super. 2016)). "[T]he nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Commonwealth v. Kerrigan*, 920 A.2d 190, 199 (Pa.Super. 2007), *appeal denied*, 594 Pa. 676, 932 A.2d 1286 (2007).

Generally, "reference to prior criminal activity by the accused, either expressly or by reasonable implication, is impermissible." *Commonwealth v. Smith*, 552 A.2d 1053, 1060 (Pa.Super. 1988), *appeal denied*, 525 Pa. 581, 575 A.2d 112 (1990). "This Court has recognized, however, that [n]ot everything a policeman says about a person constitutes an inference of prior criminal activity on the part of that person." *Id.* (internal quotation marks omitted). "A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa.Super. 2008), *appeal denied,* 600 Pa. 755, 966 A.2d 571 (2009).

Instantly, Officer Kling testified that he recognized Appellant "upon sight of him." (N.T. Trial, 3/2/21, at 74). When viewed in context, the officer's remark was spontaneous, as the Commonwealth originally posed a question about what the officer was doing at the scene. *See Kerrigan, supra*. Further, Officer Kling did not expressly reference prior criminal activity. Rather, "[m]erely because a police officer knows someone … does not suggest that the person has been engaged in prior criminal activity." *Smith, supra* at 1060. Later, Deputy Payne's testimony referenced Officer Kling's "prior dealings with" Appellant. (N.T. Trial, 3/2/21, at 149). As with the earlier testimony, Deputy Payne's turn of phrase did not expressly reference criminal conduct. *See id.* Here, the witnesses' passing comments were part of a multi-day trial that featured several Commonwealth witnesses. *See Parker, supra*. Under these circumstances, we cannot say that the court abused its discretion in denying Appellant's request for a mistrial. *See Tucker*, *supra*.

In his second issue, Appellant argues the trial court erred in imposing a period of reentry supervision as part of his sentence. Appellant relies on a recently enacted statute, 61 Pa.C.S.A. § 6137.2, in support of his claim. Appellant argues that "because the charged conduct in this case preceded the enactment of Section 6137.2, imposition of the reentry requirement violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions." (Appellant's Brief at 25-26). Appellant concludes the portion of the sentencing order providing a period of reentry supervision constitutes an illegal sentence,

and this Court must vacate that portion of the sentence. We agree.

The relevant standard and scope of review are as follows:

> [T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary. This case will also necessarily call upon us to engage in statutory construction, which similarly presents a pure question of law and also implicates the legality of [the] sentence. Thus, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Hunt*, 220 A.3d 582, 585 (Pa.Super. 2019) (internal citations and quotation marks omitted).

Section 6137.2 provides as follows:

### § 6137.2. Reentry supervision

**(a) General rule**.—This section applies to persons committed to the department with an aggregate minimum sentence of total confinement under 42 Pa.C.S. § 9756(b) (relating to sentence of total confinement) of 4 years or more. Regardless of the sentence imposed, this section does not apply to persons sentenced to death, life imprisonment, persons otherwise ineligible for parole or persons subject to 42 Pa.C.S. § 9718.5 (relating to mandatory period of probation for certain sexual offenders).

**(b) Reentry supervision.—**Any person under subsection (a) shall be sentenced to a period of reentry supervision of 12 months consecutive to and in addition to any other lawful sentence issued by the court.

**(c) Parole granted.—**Persons who have been granted any period of parole by the parole board during the same period of incarceration shall be deemed to have served the requirements of this section.

**(d) Supervision.—**A person released to reentry supervision shall be considered to be released on parole.

> **(e) Imposition.**—The court shall impose reentry supervision in addition to the maximum sentence permitted for the offense for which the defendant was convicted.
>
> **(f) Applicability.**—This section shall only apply to persons sentenced after the effective date of this section.

61 Pa.C.S.A. § 6137.2.

"Article I, Section 17 of the Pennsylvania Constitution prohibits the enactment of any *ex post facto* law." **Commonwealth v. Carey**, 249 A.3d 1217, 1228 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 373 (2021). "A criminal law is deemed *ex post facto* if two critical elements are met: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." **Id.** (internal quotation marks omitted).

In **Carey**, the trial court sentenced the defendant for criminal acts he committed in February 2019. The defendant's sentencing hearing occurred on January 13, 2020, after the enactment of Section 6137.2. Consequently, the court included a twelve-month period of reentry supervision as part of the defendant's sentence. The defendant subsequently filed a notice of appeal arguing that the imposition of reentry supervision was an unconstitutional *ex post facto* punishment as applied to him.

This Court evaluated Section 6137.2 and agreed with the defendant's argument:

> The statute at issue … was enacted on December 18, 2019. It is included under the provisions concerning the parole power of the Pennsylvania Parole Board.

- 8 -

\* \* \*

> The statute requires a trial court to impose a **mandatory** 12-month period of reentry supervision in addition to any aggregate sentence of four or more years' imprisonment. Furthermore, it applies to any defendant **sentenced** after the effective date. … [T]his law changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when it was committed.

*Id.* (emphasis in original) (internal citations and quotation marks omitted).

This Court noted that Section 6137.2 provided additional punishment for acts the defendant committed prior to the enactment of the statute. Therefore, this Court concluded that Section 6137.2, as applied to the defendant, amounted to an unconstitutional *ex post facto* punishment. **See id.** at 1229.

Instantly, the trial court agreed with Appellant's contention that the imposition of reentry supervision was improper:

> Pursuant to the re-entry supervision statute, it applies to persons sentenced after the effective date of this section. That section of the statute became effective on December 18, 2019, and [Appellant] was sentenced on April 19, 2021, after the effective date. However, on April 19, 2021, the same date [Appellant] was sentenced, the Superior Court decided [**Carey, supra**].

> \* \* \*

> In the instant case, [Appellant] committed the offenses on January 2, 2019, which is prior to the December 2019 enactment of [Section 6137.2]. Given the Superior Court's decision in **Carey**, the [t]rial [c]ourt agrees with [Appellant] that the portion of his sentence regarding re-entry supervision should be vacated.

(Trial Court Opinion, filed November 16, 2021, at 6-7) (internal citations and

quotation marks omitted). Based upon the applicable standard of review and relevant case law, we agree that the court imposed an illegal sentence under Section 6137.2. *See Carey, supra*; *Hunt, supra*. Accordingly, we vacate the provision of Appellant's sentence imposing one year of reentry supervision. In all other respects, we affirm.

Judgment of sentence affirmed in part and vacated in part. Jurisdiction is relinquished.

Judge Stabile joins this memorandum.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/06/2022