J-S64010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN LESLIE HARRIS | |
| Appellant | No. 3334 EDA 2015 |

Appeal from the Judgment of Sentence entered July 22, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0003632-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN LESLIE HARRIS | |
| Appellant | No. 3335 EDA 2015 |

Appeal from the Judgment of Sentence July 22, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No: CP-15-CR-0003633-2014

BEFORE:  STABILE, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:          **FILED NOVEMBER 15, 2016**

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant, Steven Leslie Harris, appeals from the judgment of sentence imposed on July 22, 2015, in the Court of Common Pleas of Chester County following his conviction of driving under the influence ("DUI"), possession of a small amount of marijuana, possession of drug paraphernalia, aggravated assault upon a police officer, and resisting arrest.[1] Appellant contends the trial court erred in denying his motion to suppress, in limiting evidence relating to his mental treatment and behavior, and in instructing the jury regarding Appellant's mental status. Following review, we affirm.

In its May 15, 2015 order denying Appellant's motion to suppress and in its December 17, 2015 Rule 1925(a) opinion, the trial court provided detailed factual and procedural histories of this case. We incorporate those histories herein as if fully set forth. Trial Court Order, 5/15/15, at 1 n. 2 (pp. 1-2)[2] and Rule 1925(a) Opinion, 12/17/15, at 1-3. Briefly, on August 30, 2014 at approximately 12:44 a.m., Pennsylvania State Trooper Lori Edgar ("Trooper Edgar") was on DUI roving patrol in full uniform but in an unmarked car in Chester County, when she observed Appellant operating his vehicle slowly. She followed Appellant's vehicle and engaged her mobile vehicle recordings ("MVR") system for approximately a mile and one-half.

---

[1] 75 Pa.C.S.A. § 3802(d)(1); 35 Pa.C.S.A. § 780-113(a)(31) and § 780-113(a)(32); and 18 Pa.C.S.A. § 2702(a)(3) and § 5104.

[2] Footnote 2 of the May 15, 2015 order begins on the first page of the order and spans seven pages.

Based on her training and her observations of Appellant's vehicle, Trooper Edgar concluded the operator of the vehicle might be under the influence of alcohol or a controlled substance. Believing further investigation was warranted, she activated her lights and sirens to initiate a traffic stop.

The traffic stop was conducted near an intersection in West Bradford Township. Trooper Edgar asked Appellant for his driver's license, registration and insurance card. When Appellant failed to produce the registration, Trooper Edgar advised Appellant that she believed he was smoking marijuana in the vehicle. When Trooper Edgar instructed Appellant to exit the vehicle, he instead rolled up his window and locked the doors.

A second trooper arrived on the scene but Appellant also ignored the second trooper's direction to exit the vehicle. Eventually, Appellant unlocked the doors and was assisted in exiting his vehicle. He then became more uncooperative and combative. When he began wrestling with Trooper Edgar, the second trooper tased Appellant. Appellant yelled for the trooper to tase him again and attempted to strike the trooper in the face. The trooper did tase Appellant again and Appellant was taken into custody. He was charged with DUI and related offenses under one docket number and with aggravated assault and related offenses under a separate docket number. The two cases were consolidated before the trial court and before this Court.

After his preliminary hearing and waiver of arraignment, Appellant filed a motion to suppress, claiming the vehicle stop and vehicle search, as well as the search of his person, were unlawful for lack of warrant and lack of probable cause. Motion to Suppress, 2/2/15, at 1-2.

At the suppression hearing conducted on April 16, 2015, Trooper Edgar testified as to the events occurring before and after the traffic stop. The video from the MVR system was shown during the hearing. The trial court denied the motion to suppress by order dated May 15, 2015. The case proceeded to trial on June 2, 2015, with a jury returning a guilty verdict on all charges. On July 22, 2015, the trial court imposed an aggregate sentence of three months and three days to 18 months in county prison, followed by four years and thirty days of probation. The trial court subsequently modified the sentence to allow Appellant to participate in the prison's re-entry and work release programs at the warden's discretion. This timely appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant now asks this Court to consider three questions:

1. Did the trial court err in denying [Appellant's] Motion to Suppress where the contemporaneous video recording of [Appellant's] driving clearly establishes that police had no authority or justification to stop his vehicle?

2. Did the trial court abuse its discretion in limiting and excluding evidence regarding [Appellant's] mental status and behavior, when [Appellant's] intent was central to the resolution of the case, and when he and his mother had long,

relevant experience with the effects of his autism spectrum disorder?

3. Did the trial court abuse its discretion in its instruction to the jury regarding consideration of [Appellant's] mental status and intent, where that specific intent was the crux of the issue to be resolved by the jury?

Appellant's Brief at 6.

In his first issue, Appellant asserts trial court error for denying his motion to suppress. This Court has recognized:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. (Patrick Scott) Jones*, 121 A.3d 524, 526 (Pa. Super. 2015) (brackets omitted) (quoting *Commonwealth v. (Curtis) Jones*, 988 A.2d 649, 654 (Pa. 2010)).

Appellant contends the video recording established that the officer lacked authority or justification for stopping his vehicle based on his driving. In its order denying suppression, the trial court stated:

Trooper Edgar testified that she . . . observed [Appellant's] vehicle sitting at the stop sign for approximately 45 seconds before proceeding through the intersection at three to five miles per hour.

Having observed [Appellant's] vehicle traveling at an unreasonably slow speed in the early morning hours, Trooper Edgar turned her unmarked patrol vehicle around and activated the MVR system. Given the slow rate of speed of [Appellant's] vehicle, Trooper Edgar was easily able to catch up to it. As [Appellant's] vehicle approached the town of Marshallton, Trooper Edgar observed it weaving within the lane of traffic, braking, and failing to maintain a constant speed. Based on the trooper's training and experience, she believed this conduct was indicative of an impaired operator warranting further investigation. After continuing to follow [Appellant's] vehicle for approximately a mile and [a] half, Trooper Edgar activated her lights and siren to initiate a vehicle stop. Although Trooper Edgar stated on her police radio that she was conducting a routine traffic stop, she testified that she stopped [Appellant's] vehicle for the sole purpose of investigating whether he was impaired. The vehicle stop was initiated for suspected DUI and may have led to further incriminating evidence such as an odor of alcohol/drugs, glassy/blood-shot eyes, or slurred speech. Because the trooper neither observed [Appellant] commit a violation of the Motor Vehicle Code nor stopped the vehicle for any such violation, probable cause was not required to initiate the stop. Rather, Trooper Edgar articulated specific facts establishing that she stopped [Appellant's] vehicle for suspicion of DUI. The trooper objectively pointed to specific and articulable facts leading to a suspicion of criminal activity.

Trial Court Order, 5/15/15, at 1, n. 2 (pp. 4-5).

Our review confirms that the trial court's factual findings are supported by the record. Appellant's assertions that Trooper Edgar was following Appellant's car at a distance less than the driver's manual "four second rule" or that Appellant's braking was appropriate in response to caution signs do not change our conclusion. Appellant specifically challenges a statement by the trial court that "no warning signs existed on the bridge where [Appellant] displayed the aforementioned behavior." Appellant's Brief at 27. However, Appellant acknowledges that the 15 mph sign in question is not *on* the

bridge but rather *before* the bridge.  *Id*. at 28.  The additional sign on the bridge designated a curve in the road.  *See id.* at 29.

We recognize, as did both the trial court and Trooper Edgar, that there were signs along the roadway that would appropriately prompt a driver to apply brakes to decrease speed.  However, that does not account for all of the braking or general slow travel or for the weaving with his lane of travel. We agree with the trial court's determination that Trooper Edgar's testimony was credible and that "when viewed objectively through the eyes of a trained police office, the totality of [Appellant's] behavior establishes suspicion of DUI.  A trained and experienced officer could reasonably infer that based on the time of day coupled with his erratic driving that [Appellant] may be operating his motor vehicle while intoxicated."  Trial Court Order, 5/15/15 at 1 n.2 (p. 5) (citing **Commonwealth v. Holmes**, 14 A.3d 89 (Pa. 2011) (citations to notes of testimony and exhibit omitted).

Because we conclude that the suppression court's factual findings are supported by the record, we are bound by those findings.  Further, we discern no error in the court's legal conclusions, which we adopt and incorporate herein by reference.  **See** Trial Court Order, 5/15/15, at 1 n.2 (pp. 2-5).  Appellant's first issue fails.

In his second issue, Appellant asserts the trial court abused its discretion by limiting and excluding evidence regarding Appellant's mental treatment, status and behavior.  Appellant argues that preclusion of

evidence of his autism spectrum disorder rendered him incapable of proving his lack of criminal intent. As a challenge to the admissibility of evidence, our standard of review is abuse of discretion. **Braun v. Target Corp.**, 983 A.2d 752, 760 (Pa. Super. 2009). As this Court reiterated in **Braun**,

> Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. Relevance is a threshold consideration in determining the admissibility of evidence. A trial court may, however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Generally, for the purposes of this evidentiary rule, prejudice means an undue tendency to suggest a decision on an improper basis. The erroneous admission of harmful or prejudicial evidence constitutes reversible error.

**Id.** (citations and brackets omitted).

As the trial court explained, Appellant was allowed to testify at trial about his status and behavior. Rule 1925(a) Opinion, 12/17/15 at 5-6 (quoting Notes of Testimony, 6/3/15, at 143-44). However, limiting that testimony and excluding testimony of Appellant's mother relating to an autism spectrum disorder was warranted under the circumstances. As the trial court explained, Appellant did not provide the requisite notice of intent to offer a mental health defense. **Id.** at 6 (citing R.Crim.P. 568). We find no abuse of discretion in the trial court's reasoning, which we adopt and incorporate herein by reference. **See id.** at 4-8. Appellant's second issue does not provide any basis for relief.

In his third issue, Appellant asserts trial court error stemming from the instruction delivered in response to a question posed by the jury in the course of its deliberations. As the trial court explained:

> During deliberation, the [c]ourt received several written questions from the jury, one of which stated as follows: "The defense started with a direction of prior mental health issues. The questioning stopped, but the jury was not instructed to consider or not consider the information." (N.T., 6/4/15, at 38; Court Ex. 1). Before responding to the jury's question, the [c]ourt called counsel to the courtroom and discussed it with them and obtained their respective positions regarding how the jury would be instructed.
>
> Because the evidence introduced in this case did not support a mental health defense[,] the [c]ourt returned the jurors to the courtroom and instructed them as follows: "There is no mental health diagnosis in the record. You are to consider all of the facts of record when deliberating on a verdict on any of the charges brought against [Appellant.]" (**Id.** at 54.)

Rule 1925(a) Opinion, 12/17/15, at 8-9.

> Our standard of review in assessing a trial court's jury instructions is as follows:
>
> > [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.
>
> **Commonwealth v. Trippett**, 932 A.2d 188, 200 (Pa. Super. 2007) (quoting **Commonwealth v. Kerrigan**, 920 A.2d 190, 198 (Pa. Super. 2007)).

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014).

We agree with the trial court that the instructions as a whole, including its response to the jury's inquiry, were proper. Again, as the trial court recognized, there was no mental health diagnosis for the jury to consider.[3] We find no abuse of discretion or inaccurate statement of law in the instructions. We adopt, and incorporate herein by reference, the trial court's thorough discussion of this issue. Rule 1925(a) Opinion, 12/17/15, at 8-10. Appellant's third issue lacks merit.

Judgment affirmed. In the event of further proceedings, the parties shall attach to their filings copies of the trial court's May 15, 2015 Order and its December 17, 2015 Rule 1925(a) Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2016

---

[3] The court acknowledged that Appellant's mental health status was properly considered for sentencing. Rule 1925(a) Opinion, 12/17/15, at 9-10.

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs.

: CRIMINAL ACTION

STEVEN L. HARRIS : NO. 3632-2014; 3633-2014

Brian D. Burack, Esquire, Attorney for the Commonwealth
Joseph P. Green, Jr., Esquire, Attorney for the Defendant

## ORDER

**AND NOW**, this _15th_ day of May 2015, upon consideration of Defendant's Motion to Suppress, any responses thereto, the record as a whole and after conducting an evidentiary hearing in this matter,[1] it is hereby **ORDERED** and **DECREED** that Defendant's Motion is **DENIED**.[2]

BY THE COURT:

_uPMal_

William P. Mahon,  J.

---

[1] An evidentiary hearing was held in this matter on April 16, 2015.

[2] **PROCEDURAL AND FACTUAL HISTORY**

The suppression motion now before this court was submitted by Steven Leslie Harris ("Defendant") in regard to his criminal cases docketed at term numbers 3632 and 3633 of 2014. See Def.'s Mot. to Suppress, 2/2/15. Both cases arise out of the same nucleus of operative facts. In the case identified as CR-3632-2014, Defendant is charged with Aggravated Assault (Bodily Injury on Law Enforcement Officer) in violation of 18 Pa.C.S. § 2702(a)(3); and Resisting Arrest or Other Law Enforcement in violation of 18 Pa.C.S. § 5104.

In the case identified as CR-3633-2014, Defendant is charged with Driving Under the Influence of Alcohol or Controlled Substance ("DUI") in violation of 75 Pa.C.S. § 3802(d)(1)(i), (d)(iii) and (d)(2); Violating the Controlled Substance, Drug, Device, and Cosmetic Act (Possession of Small Amount of Marijuana for Personal Use) pursuant to 35 P.S. § 780-113(A)(31)(i); Violating the Controlled Substance, Drug, Device, and Cosmetic Act (Possession of Drug Paraphernalia), under 35 P.S. § 780-113(A)(32); and Careless Driving in violation of 75 Pa.C.S. § 3714(a).

The Court finds the following facts for purposes of this Order. On August 30, 2014, at approximately 12:44 a.m., Trooper Lori Edgar of the Pennsylvania State Police ("PSP") was on DUI roving patrol. Trooper Edgar, dressed in

1

full uniform, was in an unmarked Dodge Charger that evening. Trooper Edgar's Dodge Charger was stationed facing westbound at the intersection of Strasburg and Telegraph Roads in West Bradford Township, Chester County, Pennsylvania. While stationary at the stop sign of the aforementioned intersection, Trooper Edgar observed a blue Toyota sedan approach the same intersection from the eastbound direction. The blue Toyota remained stopped at the stop sign for approximately 45 seconds before proceeding slowly through the intersection at approximately three to five miles per hour. (See N.T., 4/16/15, at 13, 15).

Trooper Edgar's vehicle made a U-turn at the aforementioned intersection in order to further observe the blue Toyota that she had just witnessed driving unusually slow through the intersection. Upon catching up to the blue Toyota, the trooper activated the MVR camera system in her patrol unit. The MVR system was properly preserved and admitted into evidence at the evidentiary hearing. The MVR system is equipped with a buffering capability that causes it to record 30 seconds of video prior to its activation. (Id. at 26). After activating the MVR system, Trooper Edgar continued to follow the blue Toyota for approximately another mile and a half. As the blue Toyota approached the town of Marshallton, the trooper observed driving behavior indicative of an impaired operator. Specifically, the blue Toyota was weaving side-to-side in its lane of traffic, braking, and failing to maintain a constant speed. (Id. at 15-17, 33-46; Com. Ex. 1).

Concluding that the operator of the vehicle may have been under the influence of alcohol or a controlled substance, Trooper Edgar activated her lights and siren to initiate a traffic stop. The traffic stop was conducted near the intersection of Strasburg and North Creek Roads, in West Bradford Township, Chester County, Pennsylvania. Upon making contact with the operator, (later identified as Defendant), the trooper asked him to provide his driver's license, registration card, and proof of insurance. After failing to produce the vehicle registration card, Trooper Edgar advised Defendant that she believed he was smoking marijuana in the vehicle. Defendant then asked if he was being pulled over at which point, Trooper Edgar responded in the affirmative. Trooper Edgar instructed Defendant to exit the vehicle. Instead of complying with the trooper's command, Defendant rolled up the driver's side window and locked the doors. At some point during this interaction, Trooper Covert arrived on the scene, dressed in full uniform, to assist Trooper Edgar with the vehicle stop. However, Trooper Covert's arrival did not persuade Defendant to comply with Trooper Edgar's directives. Rather, Defendant remained defiant by refusing to roll down the window or unlock the doors. Defendant eventually unlocked his door and was assisted in exiting the blue Toyota. (See Com. Ex. 1).

However, Defendant became more uncooperative and combative with the troopers upon exiting the vehicle. Defendant began wrestling with Trooper Edgar resulting in Trooper Covert tasing him. After being tased, Defendant stood up and shouted at Trooper Covert to tase him again. In addition to continuing to act belligerently, Defendant balled up his fists and repeatedly attempted to strike Trooper Covert in the face. At this point, Defendant was again tased and taken into custody. Defendant was repeatedly ordered to stop resisting throughout the altercation with the troopers. (See Id.).

## DISCCUSSION

At the outset, we note that the Commonwealth has the burden of going forward with evidence and establishing that the challenged evidence was not obtained in violation of the Defendant's constitutional rights. Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution "guarantee individuals freedom from unreasonable searches and seizures." Commonwealth v. El, 933 A.2d 657, 660 (Pa. Super. 2007); In the Interest of D.M., 781 A.2d 1161, 1163 (Pa. 2001). "The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution." Commonwealth v. Hawkins, 718 A.2d 265, 266 (Pa. 1998).

Not every encounter between citizens and the police is so intrusive as to amount to a "seizure" triggering constitutional concerns. Commonwealth v. Boswell, 721 A.2d 336, 340 (Pa. 1998). It is well-established jurisprudence that a forcible stop of a motor vehicle by a police officer constitutes a seizure of the driver and any occupants. Therefore, forcible stops of motor vehicles are constitutionally protected. See Commonwealth v. Cook, 735 A.2d 673, 675 (Pa. 1999); Commonwealth v. Knotts, 663 A.2d 216, 218 (Pa. Super. 1995); Commonwealth v.

2

DeWitt, 608 A.2d 1030, 1032 (Pa. 1992); Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

The Supreme Court of Pennsylvania has recognized two instances in which police officers may effect a warrantless seizure of a person. The first instance is where the officers have probable cause to believe that a crime is being or is about to be committed, thereby justifying an arrest based on probable cause. Commonwealth v. Duncan, 525 A.2d 1177 (Pa. 1987). The second instance is where the officers have reasonable suspicion that criminal activity is afoot, thus justifying an investigative detention, pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Commonwealth v. Hicks, 253 A.2d 276 (Pa. 1969). See also, Commonwealth v. Melendez, 676 A.2d 226 (Pa. 1996); Commonwealth v. Rodriquez, 614 A.2d 1378 (Pa. 1992).

In Terry, the United States Supreme Court concluded that an officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Terry, supra, at12. In order to demonstrate reasonable suspicion, the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience. Commonwealth v. Jackson, 698 A.2d 571, 573 (Pa. 1997) (citing Terry, supra, at 27); Commonwealth v. Fink, 700 A.2d 447, 449 (Pa. Super. 1997); In re N.L., 739 A.2d 564, 567 (Pa. Super. 1999); Commonwealth v. Johnson, 734 A.2d 864, 869 (Pa. Super. 1999), See also Commonwealth v. Nobalez, 805 A.2d 598, 600 (Pa. Super. 2002) (assessing totality of circumstances to determine probable cause to arrest, "not as a layperson, but through the eyes of a trained police officer").

Case law has established that certain facts, taken alone, do not establish reasonable suspicion. Commonwealth v. Matos, 672 A.2d 769 (Pa. 1996) (flight alone does not constitute reasonable suspicion); Commonwealth v. Kearney, 601 A.2d 346 (Pa. Super. 1992) (mere presence in a high crime area does not warrant a stop). However, a combination of these facts may establish reasonable suspicion. Terry, supra, at 22. (reasoning that innocent facts, when taken together, may warrant further investigation); Commonwealth v. Riley, 715 A.2d 1131, 1135 (Pa. Super. 1998) (stating "a combination of circumstances, none of which alone would justify a stop, may be sufficient to achieve a reasonable suspicion").

It is axiomatic that during a routine traffic stop, a police officer may request that a driver exit the vehicle as a matter of course. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); Commonwealth v. Lopez, 609 A.2d 177 (Pa. Super. 1992). See also Commonwealth v. Brown, 654 A.2d 1096, 1102 (Pa. Super. 1995) (A police officer may request both drivers and their passengers to alight from lawfully stopped vehicles regardless of whether the police officer has a reasonable suspicion that criminal activity is afoot). As the United States Supreme Court determined, the concern for officer safety, which is a legitimate basis for police requests to occupants to alight from stopped vehicles, outweighs the minor intrusion on the drivers and passengers whose freedom of movement had already been curtailed by the traffic stop. Maryland v. Wilson, 519 U.S. 408, 414–15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

### The vehicular stop was supported by reasonable suspicion.

In the present case, we must first consider whether probable cause or reasonable suspicion is required to support the vehicle stop. Pursuant to the Pennsylvania Motor Vehicle Code, an officer may conduct an investigatory detention if he or she has reasonable suspicion to believe that a motorist violated a provision of the motor vehicle code. The Pennsylvania Motor Vehicle Code provides as follows:

> **(a) Duty of operator or pedestrian.**— The operator of any vehicle or any pedestrian reasonably believed to have violated any provision of this title shall stop upon request or signal of any police officer and shall, upon request, exhibit a registration card, driver's license and information relating to financial responsibility, or other means of identification if a pedestrian or driver of a pedalcycle, and shall write their name in the presence of the police officer if so required for the purpose of establishing identity.

3

> **(b) Authority of police officer.**— Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the drivers license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(a) - (b); see also Commonwealth v. Sands, 887 A.2d 261, 267 (Pa. Super. 2005) (holding that the limited intrusion permitted by Section 6308(b) in the case of a vehicular stop based upon a reasonable suspicion that the driver is driving under the influence, as balanced against the Commonwealth's salutary interest in preventing DUI violations, violates neither the Fourth Amendment nor Article I, Section 8). In such cases, the officer must be able to relay specific and articulable facts that would give rise to a reasonable suspicion that the person is driving under the influence, and we conclude that this requirement is sufficient to ensure that the police do not infringe upon the citizens' rights to be free from unreasonable searches and seizures. Sands, supra, at 267.

Thus, Section 6308(b) requires only reasonable suspicion in support of a stop for the purpose of gathering information necessary to enforce the Vehicle Code violation. However, in Commonwealth v. Feczko, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc), appeal denied, 25 A.3d 327 (Pa. 2011), the Superior Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected [vehicle code] violation."

In Feczko, the police officer observed the defendant's vehicle cross over the double yellow median line and the fog line. Id. at 1286. During the ensuing vehicle stop, the officer noticed the scent of alcohol on the defendant's breath. Id. Importantly, the officer did not testify that the stop was based on suspicion of DUI. Id. The defendant was convicted of DUI and a motor vehicle code violation, and argued on appeal that the vehicle stop was illegal. Id. at 1287. The appellate court noted the distinction between "the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." Id. at 1289 (citing Sands, 887 A.2d at 270. Whereas a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense. Id. Therefore:

> "[A] vehicle stop based solely on offenses not 'investigatable' cannot be justified by a mere reasonable suspicion, because the purposes of a Terry stop do not exist—maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses."

Id. at 1290 (quoting Chase, 960 A.2d at 116.)

The analyses in Sands and Feczko are on point and controlling in the instant matter. Here, Trooper Edgar testified that she observed Defendant's vehicle at approach the stop sign located at the intersection of Strasburg and Telegraph Roads at approximately 12:44 a.m. The trooper observed Defendant's vehicle sitting at the stop sign for approximately 45 seconds before proceeding through the intersection at three to five miles per hour. N.T., 4/16/15, at 13-16.

Having observed Defendant's vehicle traveling at an unreasonably slow speed in the early morning hours, Trooper Edgar turned her unmarked patrol vehicle around and activated the MVR system. Given the slow rate of speed of Defendant's vehicle, Trooper Edgar was easily able to catch up to it. As Defendant vehicle approached the town of Marshallton, Trooper Edgar observed it weaving within the lane of traffic, braking, and failing to maintain a constant speed. (Id. at 47; Com. Ex. 1). Based on the trooper's training and experience, she believed this conduct was indicative of an impaired operator warranting further investigation. After continuing to follow Defendant's vehicle for approximately a mile and half, Trooper Edgar activated her lights and siren to initiate a vehicle stop. (Id at 16-19). Although Trooper Edgar stated on her police radio that she was conducting a routine traffic stop, she testified that she stopped Defendant's vehicle for the sole purpose of investigating whether he was impaired. (Id. at 30; Com. Ex. 1). The vehicle stop was initiated for suspected DUI and may have led to further incriminating

4

COC 10/27/2017 12:04

evidence such as an odor of alcohol/drugs, glassy/blood-shot eyes, or slurred speech. Because the trooper neither observed Defendant commit a violation of the Motor Vehicle Code nor stopped the vehicle for any such violation, probable cause was not required to initiate the stop. Rather, Trooper Edgar articulated specific facts establishing that she stopped Defendant's vehicle for suspicion of DUI. The trooper objectively pointed to specific and articulable facts leading to a suspicion of criminal activity. See Commonwealth v. Homes, 14 A.3d 89 (Pa. 2011); see also, United States v. Whitfield, 634 F.3d 741, 744 (3d Cir. 2010) (stating that in the Terry context "[i]t is not necessary that the suspect actually have done or is doing anything illegal; **reasonable suspicion may be based on acts capable of innocent explanation")** (internal quotation marks and citation omitted) (emphasis added).

After crediting Trooper Edgar's testimony, we conclude that reasonable suspicion of DUI and not probable cause of a motor vehicle violation was required to initiate the vehicle stop in this case. Moreover, we find the trooper's testimony regarding the speed of Defendant's vehicle, his breaking and weaving from side to side within the lane of traffic sufficient to establish reasonable suspicion. We acknowledge that Defendant's behavior, if observed individually, may appear innocuous. For example, Defendant asserts that he was breaking rapidly and failing to maintain a constant speed to comport with the yellow warning signs posted along the road. (Id. at 33-46; Com. Ex. 1). However, Trooper Edgar testified that she observed Defendant brake, weave and change speeds when no warning signs were present. Moreover, the MVR system clearly shows that no warning signs existed on the bridge where Defendant displayed the aforementioned behavior. (See Com. Ex. 1). We find that when viewed objectively through the eyes of a trained police officer, the totality of Defendant's behavior establishes reasonable suspicion of DUI. Holmes, supra. A trained and experienced officer could reasonably infer that based on the time of day coupled with his erratic driving that that Defendant may be operating his motor vehicle while intoxicated.

### Defendant was subject to a lawful arrest supported by probable cause.

Having determined that Defendant was subjected to a lawful vehicle stop and investigatory detention, we now review whether the troopers used unlawful force during their interaction with Defendant. Specifically, Defendant asserts that his arrest was somehow illegal because the troopers used unlawful force in effectuating the arrest. Def.'s Mot. to Suppress, 2/2/15; N.T., 4/16/15; at 4-7. Furthermore, Defendant contends that the exclusionary rule applies when unlawful force is used by police. It reasons that Defendant is arguing that since the initial encounter was an "unlawful arrest," all the criminal charges which arose as a consequence of that arrest should be dismissed. However, as we will explain, Defendant was subject to a valid detention and arrest. Furthermore, even if the arrest was somehow unlawful, Defendant was not justified in using violence to resist the officers.

Initially, we emphasize that Defendant's claim is not cognizable in the instant suppression proceedings. Furthermore, it is unclear what force Defendant takes issue with or why he believes that the use of excessive force during an arrest is subject to the exclusionary rule. Notwithstanding these procedural deficiencies, we will construe Defendant's argument as a habeas challenge. Thus, at the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to set forth a *prima facie* case of the defendant's guilt. Commonwealth v. McBride, 595 A.2d 589, 591 (Pa. 1991). A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. Commonwealth v. Wojdak, 466 A.2d 991 (Pa. 1983). The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. Commonwealth v. Marti, 779 A.2d 1177, 1180 (Pa. Super. 2001). "Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." Commonwealth v. Owen, 580 A.2d 412, 414 (Pa. Super. 1990)).

The offense of resisting arrest is set forth at Section 5104 of the Crimes Code, which provides:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, **or employs means justifying or requiring substantial force to overcome the resistance.**

5

18 Pa.C.S. § 5104 (emphasis added).

Thus, a valid charge of resisting arrest requires an underlying lawful arrest, which, in turn, requires that the arresting officer possess probable cause. Commonwealth v. Biagini, 655 A.2d 492, 497 (Pa. 1995). A determination of the lawfulness of the underlying arrest necessitates a legal conclusion that the arresting officer acted with authority and probable cause. Commonwealth v. Stortecky, 352 A.2d 491 (Pa. Super. 1975). However, this statutory language "does not require the aggressive use of force such as a striking or kicking of the officer." Commonwealth v. Miller, 475 A.2d 145, 146 (Pa. Super. 1984). Rather, even passive resistance that requires police to use substantial force to effectuate the arrest is sufficient to sustain a conviction for resisting arrest. Commonwealth v. Thompson, 922 A.2d 926, 928 (Pa. Super. 2007).

Here, none of the charges should be dismissed because Defendant was subject to a lawful arrest. Furthermore, we find that the officer's did not use unlawful force in detaining or arresting Defendant. Assuming arguendo that Defendant takes issue with Trooper Edgar's instruction to roll down the driver's side window and exit the vehicle, this claim lacks arguable merit. It is common sense to anticipate that whenever a driver is pulled over by law enforcement for a traffic stop, the investigating officer will approach the driver's side window and request to speak to the driver, or at a minimum ask for the driver's license and vehicle registration. Commonwealth v. Cartagena, 63 A.3d 294, 310-11 (Pa. Super. 2013) appeal denied, 620 Pa. 728, 70 A.3d 808 (Pa. 2013). A driver pulled over for a traffic stop routinely expects to lower his window to interact with the police officer. See 75 Pa.C.S.A. § 6308(a) (stating that when a driver is pulled over by law enforcement for a Motor Vehicle Code violation, he or she "shall, upon request, exhibit a registration card, driver's license and information relating to financial responsibility, or other means of identification ...").

In the present case, the vehicle stop was supported by reasonable suspicion. The purpose of the vehicle stop was so that Trooper Edgar could further investigate whether Defendant was impaired. It was reasonable for Trooper Edgar to ask for documentation when initiating contact with the Defendant. After being unable to produce a valid vehicle registration card, Trooper Edgar advised Defendant that he was smoking marijuana in the vehicle. Having just been informed that he was smoking marijuana, Defendant perplexingly asked Trooper Edgar if he was being pulled over. Trooper Edgar acknowledged that Defendant was being pulled over and asked him to exit the vehicle. At this point, Defendant began rolling up the driver's side window and locked the doors. Because the law allows police to request that a driver exit the vehicle during the course of the stop, Defendant's actions of rolling up the window and locking the doors was indicative that Defendant refused to comply with the trooper's command to exit the vehicle. (Com. Ex. 1).

Moreover, the asserted probable cause for the arrest was predicated upon the offenses of possession of marijuana and DUI of a controlled substance. It is disingenuous for Defendant to assert that he did not know why he was being detained when Trooper Edgar specifically informed him that he was smoking marijuana. Having probable cause to effectuate a lawful arrest, the troopers were justified in removing Defendant from his vehicle. Despite Trooper Edgar's repeated instruction that Defendant to roll down the window and exit the vehicle, he remained uncooperative. Ultimately, the troopers gained entry to the vehicle and removed Defendant. We conclude that any force used by the troopers in removing Defendant from the vehicle was self-created by Defendant's noncompliance with police directives. It is clear that Defendant was interfering with the troopers' ability to effectuate a lawful detention and arrest. Consequently, Defendant's claim that the troopers used excessive force in removing him from his vehicle fails.

Even, assuming arguendo, that Defendant takes issue with the repeated use of a taser after he was removed from his vehicle, this claim lacks arguable merit. In an effort to subdue Defendant, Trooper Covert was justified in tasing Defendant multiple times. Defendant received numerous warnings to stop resisting. However, Defendant failed to also comply with these commands. Ultimately, Trooper Covert tased Defendant to stop him from wrestling with Trooper Edgar. After being tased, Defendant became more aggressive. Specifically, Defendant charged at Trooper Covert in the middle of the roadway. Defendant proceeded to violently attack and attempted to punch Trooper Covert in the face. At this point, Defendant was again tased. The troopers now had sufficient probable cause to arrest Defendant for aggravated assault on a police officer and resisting arrest. Therefore, we find that as a matter of

6

COC 10/27/2015 12:04

fact, the non-lethal force used by the troopers was only that necessary to detain Defendant and effectuate a lawful arrest.

### An unlawful arrest will not negate a charge of aggravated assault.

We note that even if defendant was subject to an unlawful arrest, he was not justified in physically assaulting the troopers. Consequently, the Commonwealth has set forth a prima facie case for aggravated assault on a police officer.

The charge of aggravated assault was brought under subsection (a)(3) of the statute, which reads in relevant part as follows:

> A person is guilty of aggravated assault if he **attempts to cause or intentionally or knowingly causes bodily injury to a police officer**, firefighter or county adult probation or parole officer, county juvenile probation or parole officer or an agent of the Pennsylvania Board of Probation and Parole **in the performance of duty**.

18 Pa.C.S. § 2702(a)(3) (emphasis added).

Although a lawful arrest is an essential element of the crime of resisting arrest, <u>Biagini</u> makes clear that the same is not true as to an aggravated assault of a police officer. Further, <u>Biagini</u> indicates that one does not have a right to resist arrest and a finding of an "unlawful arrest" will not act as an affirmative defense to a charge of assaulting a police officer. Stated alternatively, although a finding that an arrest was unlawful will defeat a charge of resisting arrest it will not defeat a charge of aggravated assault under 18 Pa.C.S.A. § 2702(a)(3), nor will it provide immunity for any other offense that is committed in the process of resisting arrest. See <u>Commonwealth v. Biagini</u>, 655 A.2d 492, 498 (Pa. 1995). Furthermore, in 1986, the legislature amended 18 Pa.C.S. § 2702(a)(3) and substituted the words "making or attempting to make a lawful arrest" with the phrase "in the performance of duty." This change broadened the scope of the statute, evidencing the general assembly's intent to protect officers when effectuating all arrests, even those which are subsequently determined to have lacked probable cause at their inception. See 18 Pa.C.S. § 505(b)(1)(i); <u>Commonwealth v. Britt</u>, 691 A.2d 494, 497 (Pa. Super. 1997).

Turning to the facts of the instant case, we conclude that the Commonwealth has met its respective burden by setting forth a *prima facie* case that Defendant committed the charged offense. The analysis in <u>Biagini</u> is on point and controlling in the instant matter. To reiterate, a lawful arrest is not an element of this crime charged. In order to set forth a *prima facie* case for aggravated assault, the Commonwealth need only establish that Defendant **attempted to cause or intentionally or knowingly caused bodily injury to one or both of the troopers.** The evidence in this case establishes that Defendant attempted to repeatedly punch Trooper Covert in the face and physically wrestled with Trooper Edgar, while the troopers were in the performance of their duty. Accordingly, Defendant's habeas challenge with regard to this offense fails.

In light of the foregoing, we agree with the Commonwealth that the vehicle stop in this case was valid and that the troopers used lawful force during Defendant's detention and arrest. Accordingly, Defendant's suppression motion is denied.

7

COMMONWEALTH OF PENNSYLVANIA: IN THE COURT OF COMMON PLEAS

vs.

STEVEN L. HARRIS

: CHESTER COUNTY, PENNSYLVANIA

: CRIMINAL ACTION

: NO. 3632-2014; 3633-2014[1]

Nicholas J. Casenta, Jr., Esquire, Chief Deputy District Attorney
Joseph P. Green, Attorney for Defendant

**OPINION**

**AND NOW**, this *17th* day of December, 2015, this Opinion is filed pursuant to Pa. R.A.P. 1925 in response to Steven Leslie Harris' ("Defendant") timely Statements of Matters Complained of on Appeal (collectively, "Concise Statement").[2]

## PROCEDURAL AND FACTUAL HISTORY

This is an appeal of Defendant's judgment of sentence imposed on July 22, 2015. On June 4, 2015, Defendant was convicted by a jury on two criminal information numbers. Both cases arise out of the same nucleus of operative facts. In the case identified as CR-3632-2014, Defendant was convicted of one count each of aggravated assault (upon a police officer)[3] and resisting arrest.[4] In the case identified as CR-3633-2014, Defendant was convicted of one count each of driving under the influence ("DUI"),[5] possession of a small amount of marijuana ("SAM"),[6] and possession of drug paraphernalia.[7]

See Verdict Sheet, 6/4/15.

A sentencing hearing in this matter was held on July 22, 2015. Subsequent to that hearing, the Court imposed the following sentence: on the one count of DUI, Defendant received a county sentence of not less than seventy-two (72) hours and not more than six (6) months incarceration. On the one count of aggravated assault, Defendant received a standard guideline, county, sentence of not less than three (3) months and not more than twelve (12) months incarceration to be served consecutive to the DUI sentence. On that same count of aggravated assault, the Court imposed three (3) years of probation consecutive to the parole period. On the one count of resisting arrest, Defendant received one (1) year probation concurrent with the probation

---

[1]    Defendant filed a separate but identical Concise Statement of Matters Complained of on Appeal in each case numbers. The Superior Court consolidated these appeals under No. 3335 EDA 2015 by Order dated December 9, 2015. In light of the Superior Court's Order, we will issue one opinion addressing all of the issues raised on appeal.

[2]    The Concise Statements were filed with the Chester County Clerk of Courts on November 30, 2015.

[3]    In violation of 18 Pa.C.S. § 2702(a)(3).

[4]    In violation of 18 Pa.C.S. § 5104.

[5]    In violation of 75 Pa.C.S. § 3802(d)(1).

[6]    In violation of 35 Pa.C.S. § 780-113(a)(31).

[7]    In violation of 35 Pa.C.S. § 780-113(a)(32).

imposed on the aggravated assault sentence. On the one count of possession of SAM, Defendant received thirty (30) days probation consecutive to the DUI sentence. On the one count of possession of drug paraphernalia, Defendant received one (1) year probation consecutive to the SAM sentence. Consequently, Defendant's aggregate sentence is not less than three (3) months, three (3) days, and not more than eighteen (18) months of county incarceration, with four (4) years, thirty (30) days, of consecutive probation.[8]

See Sentencing Sheets, 7/22/15; N.T., 7/22/15.

On July 29, 2015, Defendant filed a post-sentence motion to modify the sentence. Prior to the disposition of that post-sentence motion, Defendant filed a direct appeal to the Superior Court on August 20, 2015. On October 26, 2015, the Superior Court quashed Defendant's appeal.[9] See Order, 2507 EDA 2015.

On October 29, 2015 the Court granted Defendant's post-sentence motion and modified the sentence to allow for Defendant's participation in the prison's Re-Entry and Work Release Programs at the warden's discretion.[10] On November 4, 2015, Defendant filed the instant appeal. By Order dated November 5, 2015, this Court directed Defendant to file of record and serve upon the undersigned a Concise Statement. On November 30, 2015, Defendant filed a timely Concise Statement.

The underlying facts giving rise to the current appeal are taken from Defendant's suppression hearing held on April 16, 2015, and are as follows: On August 30, 2014, at approximately 12:44 a.m., Trooper Lori Edgar of the Pennsylvania State Police ("PSP") was on DUI roving patrol. Trooper Edgar, dressed in full uniform, was in an unmarked Dodge Charger that evening. Trooper Edgar's Dodge Charger was stationed facing westbound at the intersection of Strasburg and Telegraph Roads in West Bradford Township, Chester County, Pennsylvania. While stationary at the stop sign of the aforementioned intersection, Trooper Edgar observed a blue Toyota sedan approach the same intersection from the eastbound direction. The blue Toyota remained stopped at the stop sign for approximately 45 seconds before proceeding slowly through the intersection at approximately three to five miles per hour. (See N.T., 4/16/15, at 13, 15).

Trooper Edgar's vehicle made a U-turn at the aforementioned intersection in order to further observe the blue Toyota that she had just witnessed stopping and driving unusually slow through the intersection. Upon catching up to the blue Toyota, the trooper activated the MVR camera system in her patrol unit. The MVR system was properly preserved and admitted into evidence at the evidentiary hearing. The MVR system is equipped with a buffering capability that causes it to record thirty (30) seconds of video prior to its activation. (Id. at 26). After activating the MVR system, Trooper Edgar continued to follow the blue Toyota for approximately another mile and a half. As the blue Toyota approached the town of Marshallton, the trooper observed driving behavior indicative of an impaired operator. Specifically, the blue Toyota was weaving side-to-

---

[8]      Defendant was granted continued bail pending appeal. See Pa.R.Crim.P 521(B).

[9]      The appeal was quashed as interlocutory because this Court had not yet disposed of Defendant's post-sentence motion. Commonwealth v. Borrero, 692 A.2d 158, 160 (Pa. Super. 1997).

[10]      All other terms and conditions of the sentence remained in place and unchanged.

COC 12/23/2015 15:20

2

side in its lane of traffic, braking, and failing to maintain a constant speed. (Id. at 15-17, 33-46; Com. Ex. 1).

Concluding that the operator of the vehicle may have been under the influence of alcohol or a controlled substance, Trooper Edgar activated her lights and siren to initiate a traffic stop. The traffic stop was conducted near the intersection of Strasburg and North Creek Roads, in West Bradford Township, Chester County, Pennsylvania. Upon making contact with the operator, (later identified as Defendant), the trooper asked him to provide his driver's license, registration card, and proof of insurance. After failing to produce the vehicle registration card, Trooper Edgar made observations and advised Defendant that she believed he was smoking marijuana in the vehicle. Defendant then asked if he was being pulled over at which point, Trooper Edgar responded in the affirmative. Trooper Edgar instructed Defendant to exit the vehicle. Instead of complying with the trooper's command, Defendant rolled up the driver's side window and locked the doors. At some point during this interaction, Trooper Covert arrived on the scene, dressed in full uniform, to assist Trooper Edgar with the vehicle stop. However, Trooper Covert's arrival did not persuade Defendant to comply with Trooper Edgar's directives. Rather, Defendant remained defiant by refusing to roll down the window or unlock the doors. Defendant eventually unlocked his door and was assisted in exiting the blue Toyota. (See Com. Ex. 1).

However, Defendant became more uncooperative and combative with the troopers upon exiting the vehicle. Defendant began wrestling with Trooper Edgar resulting in Trooper Covert tasing him. After being tased, Defendant stood up and shouted at Trooper Covert to tase him again. In addition to continuing to act belligerently, Defendant balled up his fists, flailed his arms at the trooper and attempted to strike Trooper Covert in the face. At this point, Defendant was again tased and taken into custody. Defendant was repeatedly verbally ordered to stop resisting throughout the altercation with the troopers. (See Id.).

## DISCCUSSION

In his Concise Statement, Defendant raises three (3) issues on appeal.[11] In Defendant's own words, the issues presented for review on appeal are as follows:

1. The Court erred in denying Defendant's Motion to Suppress because the police officers had no authority or justification to stop his vehicle. Defendant incorporates herein the allegations and arguments made in support of his pre-trial Motion.

2. The Court erred in limiting and excluding evidence regarding Defendant's mental status and behavior. Defendant incorporates herein the offers and arguments made on the record at trial.

3. The Court erred in its instruction to the jury regarding consideration of Defendant's mental status and intent. Defendant incorporates herein the allegations and arguments offered prior to and during the Court's various jury instructions.

See Concise Statement, 11/30/15, at 1.

---

[11] Additionally, Defendant reserved the right to supplement his Concise Statement after a review of the trial transcript. He has not supplemented his Concise Statement.

## The trial Court properly denied Defendant's Motion to Suppress.

Defendant first contends the Court erred in denying his suppression motion because the police lacked justification to stop his vehicle, we disagree. Initially, we note the standard governing review of a suppression court's denial of a motion to suppress is as follows:

> In an appeal from the denial of a motion to suppress the appellate court's role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, the appellate court may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse only if there is an error in the legal conclusions drawn from those factual findings.

Commonwealth v. Carlson, 705 A.2d 468, 469 (Pa.Super.1998) (citations omitted).

Having set forth the standard of review, we now turn to Defendant's underlying suppression claim. However, in lieu of a newly formed but redundant analysis of the claim, we write no further on this issue. Instead, we direct the Superior Court to the footnote of our May 15, 2015 Order denying Defendant's suppression motion. It is for the same reasons articulated in the Order that we determined the vehicle stop was supported by the requisite quantum of cause. Based upon that finding, we also explained to the Defendant that his constitutional rights were not violated. Accordingly, we request that the relitigation of the denial of Defendant's suppression motion cannot form a successful basis on appeal.

## The Court did not err in limiting evidence regarding Defendant's mental status and behavior.

In the second issue claimed on appeal, Defendant contends that the Court erred in limiting and excluding evidence regarding his mental status and behavior; we disagree. Notably, evidentiary rulings are committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of that discretion. Commonwealth v. Seiders, 614 A.2d 689 (Pa. 1992); Commonwealth v. Jermyn, 533 A.2d 74 (Pa. 1987). An abuse of discretion is more than just an error of judgment and, on appeal, a trial court will not be found to have abused its discretion unless the record discloses that "the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." Commonwealth v. Braithwaite, 385 A.2d 423, 426 (Pa. Super. 1978).

It is axiomatic that in order to be admissible, evidence must be relevant. Evidence is relevant if it logically tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. Pa.R.E. 401; Commonwealth v. Urrutia, 653 A.2d 706 (Pa. Super. 1995). Relevant evidence is usually probative, however, to be admissible, its probative value must outweigh its prejudicial effect. Pa.R.E. 403; Commonwealth v. Malloy, 856 A.2d 767(Pa. 2004). The function of the trial court

COC 12/23/2015 15:20

4

is to balance the alleged prejudicial effect of the evidence against its probative value, and it is not for an appellate court to usurp that function. Commonwealth v. Bartlett, 288 A.2d 796, 800 (Pa. 1972). Trial judges generally enjoy broad discretion regarding the admission of potentially misleading or confusing evidence. Commonwealth v. Parker, 882 A.2d 488, 492 (Pa. Super. 2005) (citing Daset Mining Corp. v. Industrial Fuels Corp., 473 A.2d 584 (Pa. Super. 1984)).

Here, Defendant's Concise Statement relating to this issue is vague. After independently reviewing the allegations contained in the Concise Statement, it is unclear which evidence Defendant contends was erroneously excluded or where in the record this issue was preserved for appeal. When a court has to guess what issues a defendant is appealing, that is not enough for meaningful review. Similarly, when a defendant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all. Commonwalth v. Butler, 756 A.2d 55, 57 (Pa. Super. 2000) aff'd, 812 A.2d 631 (Pa. 2002); Lineberger v. Wyeth, 894 A.2d 141, 148 (Pa. Super. 2006).

Despite Defendant's lack of specificity on this issue, we will address it to the extent that we are able to do so. Our review of the record in this matter does not reflect that a limitation and exclusion of evidence with regard to Defendant's mental status and behavior amounted to a manifestly unreasonable exercise of the Court's judgment, nor does the record reflect that it was the result of any partiality, ill-will, bias or prejudice against Defendant. Consequently, any evidentiary rulings on this matter cannot constitute an abuse of discretion. Commonwealth v. Schmidt, 263 A.2d 382, 385 (Pa. 1970); Commonwealth v. Robinson, 249 A.2d 536 (Pa. 1969).

Although Defendant's claim fails to satisfy the requisite abuse of discretion standard, it also fails for another reason. The record indicates that the Court permitted defense counsel to introduce testimony from Defendant regarding his mental health status and behavioral condition at trial. The testimony elicited on direct examination was as follows:

Defense counsel: Do You have experience where you keep asking people the same question like that?

Defendant: I have, yes, I do.

Defense counsel: Have you been, in one form or another, mental health treatment prior to these events?

Defendant: I have.

Defense counsel: For how long

Defendant: Since I was 12, 13.

Defense counsel: Have you had occasions to talk to various mental health professionals about these incidents where you keep asking the same questions?

Defendant: I have.

COC 12/23/2015 15:20

Defense counsel: Have you experienced this before?

Defendant: Yes

Defense counsel: What happens to you when you experience this?

Assistant District Attorney: Objection, specific instances of conduct.

The Court: Overruled

Defense counsel: That means you get to answer the question.

Defendant: Sorry. In those specific moments I usually like to latch on to a certain topic. And a lot of people agree and tell me that I just don't - - I can't let it go. I just latch on to certain questions and topics, and it's just difficult.

Defense counsel: Have you learned strategies for getting out of that problem, over the years?

Defendant: I have.

Defense counsel: And what are the strategies that you use when you realize that's what's going on?

Defendant: I usually just try to - - excuse me. I usually just try to walk away, de-escalate myself. Try to think about other things.

Defense counsel: You used the word "de-escalate". What is it that you need to de-escalate from in those circumstances?

Defendant: I guess questions and people in general, just questions and more things to think about than I don't want to. I mean, that - - it's - - it's - - when I realize I get into that way, I try - - I catch myself sometimes and I try to just think about anything else other than what I was thinking about.

(See N.T., 6/3/15, at 143-44).

Mental health or behavioral testimony from additional lay witnesses would have been precluded by the Pennsylvania Rules of Evidence or Rules of Criminal Procedure. A defendant, who intends to offer at trial expert evidence of a mental health condition, or a defense of insanity or mental infirmity, must file proper notice with the clerk of courts. See Pa. R. Crim. P. 568, 579.

The record in this matter is devoid of notice from Defendant that he intended to pursue a mental health defense. Likewise, Defendant did not produce an expert report during discovery. Therefore, Defendant is precluded from introducing his mental health status through a psychologist or other treatment provider. However, Defendant never attempted to call a mental health expert as a witness. Allowing Defendant to set forth a mental health defense in this manner would confuse the jury and be extremely prejudicial to the Commonwealth.

CQC 12/23/2015 15:20

Rather than attempting to present a surprising mental health defense at trial, the better practice would have been for Defendant to comply with the rules of criminal procedure or addressed this issue in a pre-trial motion. For example, a motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. Commonwealth v. Johnson, 582 A.2d 336, 337 (Pa. Super. 1990), aff'd, 626 A.2d 514 (Pa. 1993). The filing of a motion *in limine* in this case would have given the Court an opportunity to weigh the potentially prejudicial and harmful evidence before the trial commenced, thus alleviating the need for the trial judge to make a spontaneous ruling at trial to prevent the evidence from ever reaching the jury.

Notwithstanding Defendant's failure to provide notice of a mental health defense, mental illness testimony alone does not satisfy the statutory criteria for either a legal insanity or guilty but mentally ill defense. The test for legal insanity in Pennsylvania is the *"M'Naghten* Rule." Commonwealth v. Woodhouse, 164 A.2d 98 (Pa. 1960). Under the *M'Naghten* Rule, a defendant is legally insane if at the time of the act either he did not know the nature and quality of the act, or he did not know it was wrong. Commonwealth v. Plank, 478 A.2d 872 (Pa. Super. 1984); Commonwealth v. Scarborough, 421 A.2d 147 (Pa. 1980); Commonwealth v. Hicks, 396 A.2d 1183 (Pa. 1979); Commonwealth v. Harper, 387 A.2d 824 (1978).

To establish insanity there must be evidence that the defendant did not know the nature and quality of his acts or that he did not know that they were wrong. Pennsylvania law places the burden on the defendant to prove insanity, at the time that crime was committed, by a preponderance of the evidence. 18 Pa.C.S.A. § 315; Commonwealth v. Sohmer, 546 A.2d 601 (Pa. 1988). Under the clear language of section 315(a), the burden of proving insanity by a preponderance of the evidence is upon the defendant. Commonwealth v. Heidnik, 587 A.2d 687, 690–91 (Pa. 1991); it is within the jury's right to disbelieve an insanity defense and credit the testimony of the eyewitnesses. Commonwealth v. Holley, 945 A.2d 241, 249 (Pa. Super. 2008) (holding that the jury was within their rights to disbelieve the defendant's insanity defense and credit the testimony of the eyewitnesses).

Pennsylvania's law distinguishes between "legally insane" and "guilty but mentally ill." At trial, a guilty but mentally ill charge arises only as an alternative for the jury when a defendant seeks to raise an insanity defense. Miskovitch v. Pennsylvania Bd. of Prob. & Parole, 77 A.3d 66 (Pa. Commw. Ct. 2013) appeal denied, 87 A.3d 322 (Pa. 2014). The guilty but mentally ill verdict is available only if a defendant's proffered insanity defense does not reach the necessary *M'Naghten* standard. Commonwealth v. Yasipour, 957 A.2d 734 (Pa. Super. 2008).

The guilty but mentally ill defense is codified in 18 Pa. C.S. § 314 and states in pertinent part:

> **(a) General rule.**--A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

> **(c) Definitions.**--For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):

COC 12/23/2015 15:20

7

(1) *"Mentally ill."* One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

(2) *"Legal insanity."* At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

18 Pa. C.S. § 314.

Here, the insanity and guilty but mentally ill defenses are not cognizable. Therefore, the Court excluded any evidence offered by the defendant for the purpose of proving a mental health defense, except competent testimony by Defendant. Accordingly, Defendant's claim affords him no relief on appeal.

**The Court did not err in its instruction to the jury regarding consideration of Defendant's mental status and intent.**

In the third issue claimed on appeal, Defendant contends the Court erred in its instruction to the jury regarding the consideration of Defendant's mental health status and criminal intent. We note, however, that Defendant's Concise Statement regarding this issue is also vague. After independently reviewing the allegations contained in Defendant's Concise Statement, it is again unclear which "allegations and arguments offered prior to and during the Court's various jury instructions" Defendant incorporates into this claim.

Rule 1925(b) authorizes a trial court to order an appellant to file a "concise statement of matters complained of on appeal." Pa. R.A.P. 1925(b). Failure to comply with a Rule 1925(b) order "may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of." Id. Here, Defendant's failure to adequately identify the issue pursued on appeal prevents us from providing meaningful review regarding this issue. In addition, the Court is unable to determine whether a proper objection was made at trial to preserve the issue for appeal. Consequently, Defendant's claim is waived.

Notwithstanding the waiver of the claim, we will attempt to address the issue to the extent that we are able to identify such an issue. Our review of the record indicates that Defendant's claim may relate to a written question submitted by a juror during deliberation. (N.T., 6/4/15, at 54). Even assuming that we correctly guessed the issue presented in Defendant's Concise Statement, it lacks arguable merit.

As part of its charge, the Court instructed the jurors that all questions and communications about the case must be submitted to a tipstaff in written form and signed by the jury foreperson. (Id. at 27-28). During deliberation, the Court received several written questions from the jury, one of which stated as follows: "The defense started with a direction of prior mental health issues. The questioning stopped, but the jury was not instructed to consider or not consider the information." (N.T., 6/4/15, at 38; Court Ex. 1). Before responding to the jury's question, the Court called counsel to the courtroom and discussed it with them and obtained their respective positions regarding how the jury would be instructed.

CQC 12/23/2015 15:20

8

Because the evidence introduced in this case did not support a mental health defense; the Court returned the jurors to the courtroom and instructed them as follows: "There is no mental health diagnosis in the record. You are to consider all of the facts of record when deliberating on a verdict on any of the charges brought against this [Defendant]." (Id. at 54). Furthermore, the jury, as the trier of fact, in passing upon the credibility of the witnesses, is free to believe all, part, or none of the evidence. Commonwealth v. Cousar, 928 A.2d 1025, 1033 (Pa. 2007). The Court did not commit an error of law by failing to instruct the jury on Defendant's potential mental health condition when the record is devoid of any such defense.

Having already articulated above why a mental health defense was improper and testimony in support thereof was inadmissible, we incorporate our previous analysis herein. Although Defendant testified regarding his peculiar behavior during the traffic stop; this testimony alone is insufficient to establish that he did not know the quality of the act committed or that he did not know what had been done was wrong. (N.T., 6/3/15, at 142-44). A reasonable trier of fact could infer from the totality of Defendant's conduct that he knew that his driving under the influence which constituted a crime. Specifically, Defendant's actions of rolling up the driver side window and locking the doors was indicative that Defendant realized the gravity of his conduct and, therefore, refused to comply with the trooper's command to exit the vehicle. (Com. Ex. 1 – MVR DVD).

Similarly, Defendant's peculiar behavior cannot negate the criminal intent element. In order to obtain a conviction for aggravated assault, the Commonwealth need only establish that Defendant attempted to cause or intentionally or knowingly caused bodily injury to one or both of the troopers. 18 Pa.C.S. § 2702(a)(3). This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury. Commonwealth v. Polston, 616 A.2d 669 (Pa. Super. 1992), appeal denied, 626 A.2d 1157 (Pa. 1993). Here, Defendant's refusal to comply with the troopers' verbal commands to stop resisting arrest coupled with the fact that he violently charged at trooper Covert in the middle of the roadway and attempted to strike him with a closed fist, (Com. Ex. 1 – MVR DVD), evidences Defendant's conscious intent to attempt to cause bodily injury to the trooper. Because this conduct alone clearly constitutes an attempt to inflict bodily injury, it is the very type of conduct prohibited by § 2702(a)(3).

Defendant's testimony at trial does not negate his intent to cause bodily injury to Trooper Covert. Similarly, testimony that he has communicated with mental health professionals about his tendency to get fixated on questions does not amount to a mental health diagnosis under the Diagnostic and Statistical Manual ("DSM") or negate the requisite intent. Defense counsel further contends that because Defendant was "scared and frightened" during the traffic stop; this amounts to some kind of mental health condition that prevented him from formulating the required statutory intent. (N.T., 6/4/15, at 40-42). However, we find it misleading to equate the way someone is feeling or their emotional state, without additional evidence, to a mental health condition. This would allow a defendant to present an impermissible "back-door" mental health defense to the jury without expert testimony.

As an aside, although the mental health evidence was not appropriate for the jury's consideration; it was properly considered for sentencing purposes. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. Commonwealth v. Rodda, 723 A.2d 212 (Pa. Super. 1999) (en banc). Here, because counsel was informed that his client suffered from some mental health

COC 12/23/2015 15:20

9

issues, this may have provided a mitigating factor at sentencing and was therefore admissible at sentencing.

At sentencing, counsel thoroughly presented Defendant's mental health status and behavioral problems for the Court's consideration. Specifically, counsel prepared a sentencing memorandum which included a psychological evaluation and psychiatric summary detailing Defendant's mental health status, prepared by his treating psychologist and psychiatrist, respectively. The Court reviewed the memorandum in aid of sentencing prior to imposing sentence. (Def.'s Sentencing Mem., 7/21/15; N.T., 7/22/15, at 11-13, 25-29). Counsel adequately presented additional mitigation evidence, namely a letter from Defendant's mother discussing Defendant's mental health and behavioral issues, (N.T., 7/22/15, at 5; Exhibit D-1), and the lengthy testimony from Defendant's uncle detailing the same. (N.T., 7/22/15, at 5-9). Lastly, counsel engaged in discussion with the Court wherein he advocated for Defendant to receive a sentence that would allow for continued mental health treatment and rehabilitation as opposed to total confinement.

After considering the mitigation evidence and sentencing guidelines, the Court crafted a sentence which it believed to be consistent with the goals of sentencing. In fashioning [a] sentence, a judge is obligated 'to follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.' " Commonwealth v. Monahan, 860 A.2d 180, 184 (Pa. Super. 2004). "[A] court is required to consider the particular circumstances of the offense and the character of the defendant." Commonwealth v. Griffin, 804 A.2d 1, 10 (Pa. Super. 2002), appeal denied, 868 A.2d 1198 (Pa. 2005) (citing Commonwealth v. Burns, 765 A.2d 1144 (Pa. Super. 2000)), appeal denied, 782 A.2d 542 (Pa. 2001). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." Griffin, supra. See also Commonwealth v. Wise, 848 A.2d 932 (Pa. Super. 2004), appeal denied, 863 A.2d 1146 (Pa. 2004). Accordingly, we find that counsel adequately investigated and presented mental health evidence regarding Defendant's background, his mental and emotional state and history of drug abuse at sentencing.

In light of the foregoing, we respectfully request that the Superior Court affirm the decisions of this Court.

BY THE COURT:

_____
William P. Mahon                J.